**AFFIDAVIT**

I, DEA Special Agent Keon J. Hemerlein, being duly sworn, depose and say the following:

**INTRODUCTION**

1. Your Affiant submits this affidavit in support of a criminal complaint and arrest warrant charging Tyrone CRAFTER with Possession with Intent to Distribute a Controlled Substance, in violation of Title 21, United States Code, section 841(a)(1).

**AGENT'S BACKGROUND**

2. I am a Special Agent with the Drug Enforcement Administration (DEA) and have been since April 2024. Prior to my employment with the DEA, I was employed as a Police Officer with the City of Brunswick, OH for approximately 1 year and the City of Solon, OH for approximately 5 years. I have completed the 16-week DEA Basic Agent Training (BAT) course in Quantico, Virginia. As part of the BAT course, I have received training in narcotic investigations, narcotic interdiction, identification of narcotics, search and seizure issues, preparing search warrants, surveillance techniques, preparation and execution of narcotic search warrants, debriefing of defendants, witnesses, and cooperating sources. I have also graduated from the Cleveland Heights Police Academy, where I obtained my Ohio Peace Officer Training Certificate and training related to narcotics investigations.

3. I have been involved in multiple narcotics-related arrests, have executed search warrants, seized narcotics or dangerous drugs.  I have supervised the activities of informants and cooperating witnesses who have provided information and assistance resulting in drug buys, searches, and arrests.  Based on the above experience, I am

1

familiar with the *modus operandi* of persons involved in the illicit distribution of controlled substances, as well as the terminology used by persons involved in the illicit distribution of controlled substances.  I am aware that persons involved in the illicit distribution of controlled substances nearly always attempt to conceal their identities and the locations at which drug transactions take place.  I know that individuals engaged in organized drug distribution and sales often maintain records of those sales and also maintain extensive contacts with persons from whom they receive drugs and to whom they distribute drugs.  It is likewise essential that such organized groups meet to formulate plans concerning narcotics or other illegal activities, and to divide their illegal proceeds.

      4.  I have also received training in the identification of narcotics, search and seizure issues, and preparing search warrants. I have had experience in surveillance techniques, investigating narcotic and criminal cases, including the preparation and execution of narcotic and other criminal case search warrants and debriefing of defendants, witnesses, cooperating sources and other persons who have personal knowledge of narcotics and criminal violations.  I have been involved in narcotic related arrests and executed search warrants, which resulted in the seizure of narcotics, and supervised the activities of informants who have provided information and assistance resulting in narcotic purchases.  I have questioned suspects, debriefed informants and have conferred with other officers and prosecuting attorneys, and as a result have gained experience in investigating drug trafficking organizations. On a regular basis, I review law enforcement bulletins and intelligence reports regarding narcotic trafficking and smuggling, and remain in communication with counterparts in order to keep up to date

with modern techniques and trends used by narcotic traffickers in the domestic and international arena.

## RELIABLE CONFIDENTIAL SOURCES

5. In June 2025, a confidential source ("CS-1") provided investigators with information that **Tyrone CRAFTER** is a multi-ounce methamphetamine dealer in the Youngstown, OH area. CS-1 reported that **CRAFTER** sold drugs out of his residence in Youngstown, OH. CS-1 identified an Ohio BMV photo of **CRAFTER**. To my knowledge, CS-1 has never provided information that was deliberately false or misleading. CS-1 obtained his knowledge regarding **CRAFTER** by speaking and interacting directly with him.

6. CS-1 has provided information to law enforcement since June 2025. I believe CS-1's information is reliable because the information CS-1 has provided has been corroborated by independent investigation, physical surveillance, and other law enforcement activities. CS-1 has a drug-related history and is currently working for prosecutorial consideration. To my knowledge, CS-1 has never provided information to law enforcement that was deliberately false or misleading. Whether male or female, will be referred to with masculine pronouns

## PROBABLE CAUSE

7. During the week of July 7, 2025, investigators conducted a controlled purchase utilizing CS-1 of suspected methamphetamine from CRAFTER. The CS and CRAFTER agreed to meet at a public location in the Northern District of Ohio. Investigators observed CRAFTER exit his residence located at XX3 New Court, Youngstown, OH and conduct the narcotics transaction with CS-1. Investigators observed

3

CRAFTER exchange narcotics for the pre-recorded funds with CS-1. Investigators observed CRAFTER return to his residence. Investigators later received lab results which indicated the presence of methamphetamine with a purity level of 78% and higher.

8. During the week of July 14, 2025, investigators utilized CS-1 to conduct a second controlled purchase of ounce quantities of suspected methamphetamine from CRAFTER. CS-1 and CRAFTER agreed to meet at a public location in the Northern District of Ohio. Investigators observed CRAFTER exit his residence located at XX3 New Court, Youngstown, OH and conduct the narcotics transaction with CS-1. Investigators observed CRAFTER exchange narcotics for the pre-recorded funds with CS-1. Investigators observed CRAFTER return to his residence. Investigators later field tested the suspected narcotics which yielded positive results for the presence of methamphetamine.

9. On July 31, 2025, investigators executed a federal search warrant at CRAFTER's residence located at XX3 New Court, Youngstown, OH. Investigators seized a total of 2486.1 gross grams of methamphetamine as well as 1698.7 gross grams of suspected fentanyl. Both substances field tested positive for the presence of methamphetamine and fentanyl. Investigators also seized 5 firearms located in the residence.  Investigators also located a digital scale in the kitchen as well as a marijuana grow operation in the attic. Investigators also located various other substances which have been sent to the DEA lab for further analysis. During a post arrest interview, CRAFTER stated he knew of the powder and crystal substances and "it's been there for a long time," and "some months," and if he had a way to "move it" it would be moved. Investigators know based of training and experience that "move it" also means selling

controlled substances. CRAFTER was arrested by investigators and transported to the Mahoning County Jail.

10. I know, based on training and experience, that 2486.1 gross grams of methamphetamine and 1698.7 gross grams of fentanyl are distribution amounts.

## **CONCLUSION**

11. Based on the above, there is probable cause to believe that Tyrone CRAFTER has committed the offense of Possession with Intent to Distribute a Controlled Substance, in violation of Title 21, United States Code, Section 841(a)(1).

SA *[signature]*
Keon J. Hemenein
Special Agent
Drug Enforcement Administration

Sworn to via telephone on this 31st day of July, 2025 after submission by reliable electronic means. Fed. R. Crim. P. 3, 4(d), and 4.1

*Carmen Henderson*
Carmen E. Henderson
U.S. Magistrate Judge

5